The judgment of the United States Customs Court is *reversed*.

UNITED STATES *v.* SUTHERLAND INTERNATIONAL DESPATCH, AND
E. P. STEPHENSON, AGENTS FOR KEARFOTT ENGINEERING CO.
(No. 3707)[1]

United States Court of Customs and Patent Appeals, November 6,
1933

*Charles D. Lawrence*, Assistant Attorney General (*William Whyman*, special attorney, of counsel), for the United States.
*Beardsley & Bradley* (*Wm. L. Wemple* of counsel) for appellee.

T.D. 46790.

[Oral argument October 5, 1933, by Mr. Lawrence; submitted on brief by appellee]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

LENROOT, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court, Second Division, overruling the classification by the collector of certain merchandise imported at the port of New York, described in the invoices accompanying the entries, and in the report of the appraiser, as patent silent window channels.

The merchandise was classified by the collector under paragraph 397 of the Tariff Act of 1930 at 45 per centum ad valorem. Appellees protested such classification and in the protests claimed that the merchandise was *eo nomine* provided for under paragraph 381 of said act and dutiable at 12 cents per pound.

The Customs Court sustained the protests, holding the merchandise to be dutiable as claimed. Judgment was entered accordingly, and from such judgment the Government took this appeal.

The competing paragraphs of said tariff act read as follows:

PAR. 397. Articles or wares not specially provided for, if composed wholly or in chief value of platinum, gold, or silver, and articles or wares plated with platinum, gold, or silver, or colored with gold lacquer, whether partly or wholly manufactured, 65 per centum ad valorem; if composed wholly or in chief value of iron, steel, lead, copper, brass, nickel, pewter, zinc, aluminum, or other metal, but not plated with platinum, gold, or silver, or colored with gold lacquer, whether partly or wholly manufactured, 45 per centum ad valorem.

PAR. 381. Copper in rolls, rods, or sheets, 2½ cents per pound; copper engravers' plates, not ground, and seamless copper tubes and tubing, 7 cents per pound; copper engravers' plates, ground, and brazed copper tubes, 11 cents per pound; brass rods, sheet brass, brass plates, bars, and strips, Muntz or yellow metal sheets, sheathing, bolts, piston rods, and shafting, 4 cents per pound; seamless brass tubes and tubing, 8 cents per pound; brazed brass tubes, brass angles and channels, 12 cents per pound; bronze rods and sheets, 4 cents per pound; bronze tubes, 8 cents per pound.

The only testimony offered by appellees upon the trial in the Customs Court was that of the vice president of the Kearfott Engineering Co., for whom appellees acted as agents. The Government introduced no testimony. A sample of the merchandise was introduced and received in evidence, marked "Exhibit 1"; upon this sample we find stamped the words: "BECLAWAT SILENT WINDOW CHANNEL PATENT No. 14688."

It appears from Exhibit 1 that the article here in question is composed of a brass channel and felt, the felt lining the inner surfaces of the channel. It was admitted upon the trial in the Customs Court that it is composed in chief value of brass.

Appellees' witness testified as follows as to the use of the article in this country:

Q. What is this material used for in this country, Mr. Garabrant?—A. We use the material in connection with marine windows—the channel, felt-lined channel in which the glass slides. And we prefer using that, as it makes the glass noiseless, and also adds considerable strength to the structure of the window.

Q. This is used, then, so far as you dispose of it, in the shipbuilding industry in the United States?—A. Wholly that.

Q. In the construction of the superstructure?—A. Yes, sir.

Q. And the particular part of that structure that it goes into is the portholes or windows?—A. It is the rectangular windows.

Q. Are you the exclusive importers of this particular merchandise in the United States?—A. Yes, sir.

Q. Sole agents?—A. Yes.

Q. Do you sell it in this country generally?—A. Yes, sir.

Upon cross-examination the witness testified as follows:

X Q. And it would be a brass channel in the case of your competitors where it had no felt; is that correct?—A. No.

X Q. It would not be a brass channel unless it had the felt in it?—A. No. I didn't mean to convey that. You speak about my competitor. I have no competition in that particular article.

X Q. When they sell a brass channel of the same dimensions as this without felt, what is it? Is it a brass channel, or is it——?A. That is a brass channel.

X Q. But I mean when they sell it without the felt.—A. I would say it was a brass channel.

X Q. Still a brass channel?—A. Yes.

X Q. But yours has the felt in it, in addition. Now, that felt has a well-defined purpose, has it not?—A. Yes, sir.

X Q. And I believe you said that was to prevent the windows from rattling?—A. Yes.

X Q. And to make a closer fit, keeping out the elements?—A. That is right.

X Q. Very essential to the kind of brass channel that you deal in, isn't it?—A. Yes.

X Q. An order filled with brass channels, from one of your customers, with material without the felt in it, would that be acceptable?—A. No.

X Q. They wouldn't accept it, would they?—A. No, sir.

X Q. *They would have to go ahead and further process it, and put the felt in it, if they used it in the marine windows, wouldn't they?*—A. *Yes.* (Italics ours.)

In our opinion the foregoing testimony, together with our inspection of Exhibit 1, clearly establishes that the articles here in question are more than "brass channels," as those words are used in said paragraph 381.

A case somewhat analogous to the case at bar, arising under the Tariff Act of 1909, is that of *Hirsch & Co. et al.* v. *United States*, 4 Ct. Cust. Appls. 82, T.D. 33365. The merchandise there involved consisted of steel strips plated with nickel, classified under paragraph 199 of said act, which paragraph was substantially similar to paragraph 397, *supra*. The protest claimed that the merchandise was

dutiable as bands and strips of steel under paragraph 124 of said act. This court in its opinion stated:

In answer to the question presented by the record it may be said that although the merchandise was strips of steel in its first estate, it nevertheless became something more than that when it was subsequently plated with nickel. This, of course, was done before importation. It can hardly be doubted that some change in the classification and assessment of the article must follow upon such a substantial change in its component materials, its use, and value. * * *

* * * * * * *

This conclusion leaves the present importation to a competition between the provisions of paragraph 124 for strips of steel exceeding 12 feet in length, upon the one hand, and the provisions of paragraph 199 for manufactures of metal, upon the other hand. As between these two classifications the latter is the applicable one, because, as above observed, when the steel strips were plated with nickel they became something more than steel strips, and, not being specifically enumerated in their advanced condition, they properly fall within the general provisions of paragraph 199 for manufactures of metal not specially provided for. *Victor* v. *United States* (128 Fed., 472); *Eckstein* v. *United States* (140 Fed., 94).

While it is true that the court in that case made the observation that in the articles there involved the nickel apparently had relatively the greater value, the opinion does not indicate that such fact was material to the decision of the court.

In the case at bar, we may paraphrase the language quoted from the case last cited by saying that it may be said that although the major part of the article here involved, in its first estate, was a brass channel, it nevertheless became something more than that when it was subsequently lined with felt. We here have the additional element, that it was dedicated to a particular use.

As a matter of fact, it appears from the testimony in the case at bar that the processing of the brass channels by the addition of felt in the manner described created a new article, viz, "silent window channels," and was dedicated solely to a use different than the use of brass channels not so processed. That the use of these articles is different than the use of brass channels is shown by the testimony of appellee's witness, wherein he stated that in order to use brass channels for marine windows it would be necessary to process them further by placing felt in them.

We further think that this case is controlled in principle by our decision in the case of *United States* v. *Strauss & Buegeleisen*, 20 C.C.P.A. (Customs) 378, T.D. 46184, and cases therein cited. The merchandise involved in said case consisted of small, circular disks of glass and small oblong disks of the same material, dedicated to the single use of making goggles. These disks were made from uncolored, unpolished, crown glass in the form of cylinders, said cylinders having been cut, flattened, annealed, and then cut into the pieces as imported. The issue dealt with by this court in said case was whether the im-

268

ported merchandise was classifiable as cylinder glass under paragraph 219 of the Tariff Act of 1922, or as manufactures of glass under paragraph 230 of said act. The court held that the merchandise was properly classifiable as manufactures of glass under paragraph 230 of said tariff act and, speaking through Presiding Judge Graham, said:

The samples, however, show the goods to be something more than plain glass. They have been subjected to a manufacturing process. They have been dedicated, in so far as this record goes, to a single use and have no other use than in the making of goggles.

So in the case at bar, Exhibit 1 shows the articles to be something more than brass channels. The brass channel forming a part of said article has been subjected to a manufacturing process. The testimony shows that the articles have been dedicated to a single use, and have no other use than in rectangular windows of marine craft, a use disclosed by the record to be different from the use to which brass channels without a further manufacturing process are put.

For the reasons stated, the judgment of the United States Customs Court is *reversed*.